# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

ART HEADQUARTERS, LLC,

    Plaintiff,

v.                                                   Case No: 8:19-cv-2899-T-36JSS

MARGARET LEMAK,

    Defendant.

_____

**ORDER**

This matter comes before the Court upon Plaintiff Art Headquarters, LLC's ("Art Headquarters") Emergency Motion for Temporary Restraining Order (Doc. 5) and memorandum in support (the "Motion").[1] In the Motion, Art Headquarters contends it will be irreparably harmed unless Defendant Margaret Lemak ("Lemak"), a former employee of Art Headquarters, is enjoined for a period of 22 months from activities that compete with Art Headquarters, from disclosing confidential information, and from misappropriating trade secrets. Doc. 5-1 at pp. 1-2. The Court, having considered the Motion and being fully advised in the premises, will deny the Motion.

**I.    BACKGROUND[2]**

Art Headquarters, which does business as the Wendover Art Group, creates and sells distinctive wall décor to retail, interior design, hospitality, and healthcare customers throughout the United States and abroad. Doc. 6 at p. 1. Art Headquarters takes reasonable efforts to maintain

---

[1] Art Headquarters' Motion, presented in two separate filings, violates the Court's Local Rules which require that "[i]n a motion or other application for an order, the movant shall include a concise statement of the precise relief requested, a statement of the basis for the request, and a memorandum of legal authority in support of the request, all of which the movant shall include in a single document not more than twenty-five (25) pages." L.R. M.D. Fla. 3.01(a). The Court will nonetheless consider the Motion based on the allegation of emergency.

[2] The Background is based on the facts as alleged in Art Headquarters' Motion, including the attached affidavits and exhibits.

the secrecy of its trade secrets and confidential information, protecting such information outward and inward. *Id.* at p. 5. Art Headquarters imposes protections within the company, granting certain essential employees the right to view documents and denying access to others. *Id.*; Affidavit of Tom Maloney, doc. 6-4 ("Maloney Aff."), at ¶¶ 4-7. Specifically, pricing models have strict access policies, and for certain clients, are entirely secured. Doc. 6 at p. 5; Maloney Aff. at ¶¶ 7-8. Access for art contracts, royalty information, top accounts, and key customer information is limited to essential employees. Doc. 6 at p. 5; Maloney Aff. at ¶¶ 5, 9.

Art Headquarters employed Lemak as an art consultant from August 6, 2018 to September 12, 2019. Doc. 6 at p. 1; Affidavit of Kandice Zeman, doc. 6-3 ("Zeman Aff.") at ¶¶ 11-12. As an art consultant, Lemak was responsible for, among other things, artwork program development, interpreting and reinforcing design concepts through artwork selection and graphic manipulation, project management, business development, and maintaining client relationships. Zeman Aff. at ¶ 5.

Lemak's employment with Art Headquarters involved her with, and exposed her to, confidential and trade secret information relating to Art Headquarters' business operations throughout the United States. Doc. 6 at p. 1. For example: Lemak was trained using Art Headquarters' proprietary system for evaluating art consultants and staffing its business needs, had access to and regularly used Art Headquarters' quotation model, knew the identity of and had full access to all of Art Headquarters' artist contracts, including their terms and royalty amounts, was provided with a breakdown of Art Headquarters' top customers, target customers, competition, and current and future sales projections, and received current information about customer information and sales. Doc. 6 at p. 4; Hoffman Aff. at ¶¶ 7-16.

Before beginning her position with Art Headquarters, Lemak signed an employment agreement promising not to (1) take a job with any of Art Headquarters' competitors for 22 months following termination of her employment; (2) solicit Art Headquarters' customers; or (3) disclose Art Headquarters' confidential and trade secret information. Doc. 6 at pp. 2-3; Doc. 6-1 (the "Agreement"). Lemak also agreed to return all property to Art Headquarters upon termination of her employment. *Id.*

Lemak's employment with Art Headquarters ended September 12, 2019. Doc. 6 at p. 6. During Lemak's "offboarding," Art Headquarters discovered e-mails Lemak sent to independent sales representatives communicating her departure. Maloney Aff. at ¶¶ 11-13. One such e-mail stated, in pertinent part, "I am leaving Wendover, but I will be moving to Chicago in the next few months and would love to connect and/or help out in any way that I can with your work in the area." Doc. 6-4 at p. 6. Shortly after Lemak's employment ended, Art Headquarters took inventory of all documents at Lemak's work station. Doc. 6 at p. 6. At that time, Art Headquarters discovered that a key binder containing confidential and trade secret information—details of top customers, target customers, and competition—was missing. *Id.*; Hoffman Aff. at ¶ 21.

Earlier this month, Art Headquarters discovered that Lemak was working as an art consultant for a competitor, Artline Group ("Artline"). Maloney Aff. at ¶ 17. Art Headquarters and Artline compete for many of the same customers; like Art Headquarters, Artline develops and produces artwork for companies that do business in commercial markets. Hoffman Aff. at ¶ 27. If Artline gained access to Art Headquarters' confidential and proprietary information that Lemak had gathered over the course of her employment with Art Headquarters, Artline would have a significant economic and competitive advantage. *Id.* at ¶ 28.

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 65(b)(1) authorizes the court to issue a temporary restraining order where "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition" and "the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." However, a temporary restraining order "is an extraordinary remedy to be granted only under exceptional circumstances." *Cheng Ke Chen v. Holder*, 783 F. Supp. 2d 1183, 1186 (N.D. Ala. 2011) (citing *Sampson v. Murray*, 415 U.S. 61 (1974)).

To obtain a temporary restraining order, a movant must show: (1) a substantial likelihood of success on the merits; (2) an irreparable injury in the absence of the requested injunction; (3) a threatened injury that exceeds any injury to the non-moving party caused by the injunction; and (4) that public policy favors such an order. *Dimare Ruskin, Inc. v. Del Campo Fresh, Inc*., No. 8:10-cv-1332-T-23AEP, 2010 WL 2465158, at *1 (M.D. Fla. June 15, 2010) (citing *Four Seasons Hotels & Resorts, B.V. v. Consorcio Barr, S.A*., 320 F.3d 1205, 1210 (11th Cir. 2003)); *see also* M.D. Fla. L.R. 4.05(b)(4) (requiring a party requesting a temporary restraining order to submit a brief or memorandum addressing these factors).

In addition, Local Rule 4.05(b)(3), Middle District of Florida, requires that a motion for a temporary restraining order: (1) describe precisely the conduct sought to be enjoined; (2) set forth facts on which the Court can make a reasoned determination as to the amount of security which must be posted pursuant to Rule 65(c); (3) be accompanied by a proposed form of temporary restraining order prepared in strict accordance with the several requirements contained in Rule 65(b) and (d); and (4) be accompanied by a supporting legal memorandum or brief. *See* M.D. Fla.

L.R. 4.05(b)(3). Additionally, the Local Rules provide that a motion for temporary restraining order must demonstrate that the movant's anticipated injury "is so imminent that notice and a hearing on the application for preliminary injunction is impractical if not impossible." *Id.* at 4.05(b)(2).

## III. DISCUSSION

The extraordinary remedy of a temporary restraining order is not warranted in this case. Art Headquarters has not clearly shown that immediate and irreparable injury will result before the adverse party can be heard in opposition, nor that injury is so imminent that notice and a hearing is impractical if not impossible.

Art Headquarters contends Lemak's violation of the Agreement—working for a competitor less than 22 months after the termination of her employment with Art Headquarters—"must be enjoined" because it puts Art Headquarters' trade secrets and proprietary information "at severe risk of misappropriation and exposure." Doc. 6 at p. 2. But nothing in Art Headquarters' filings support an inference that it will suffer immediate injury. Indeed, Art Headquarters describes its alleged injuries only in speculative terms. *E.g.*, doc. 6 at p. 2 (discussing "risk" of misappropriation); *id.* at p. 7 (stating Lemak's new employment "risks the inevitable disclosure" of trade secrets); *id.* (stating Artline "stands to gain" an advantage and "stands to obtain" economic value); *id.* at p. 13 (stating Lemak "can" exploit the information she gained); *id.* at p. 14 (stating there is a "threat—indeed, inevitability—" of harm); *id.* (stating there is a "significant risk—if not a strong likelihood" that Lemak will use Art Headquarters' proprietary information). Art Headquarters cites to no federal case entering a temporary restraining order based on such speculation.

Art Headquarters also fails to offer sufficient detail to rise above the speculation. Although Art Headquarters avers that Lemak's new employer is a competitor and that Lemak holds the same job title as she did previously with Art Headquarters, it does not explain with reasonable specificity how it knows that Lemak's new position will make it "inevitable" that she utilize Art Headquarters' trade secret and confidential information.

That Art Headquarters had knowledge of other potential violations by Lemak months ago, but apparently took no action, also suggests that Art Headquarters does not believe it will suffer immediate and irreparable injury before Lemak can be heard in opposition. In its Motion, Art Headquarters discusses (1) how it discovered "shortly after" Lemak left on September 12, 2019 that a binder containing trade secret and confidential information was missing and (2) how it discovered, during her "offboarding process," an e-mail to an independent sales representative about working opportunities. Maloney Aff. at ¶ 13; Doc. 6-4 at p. 6; Hoffman Aff. at ¶ 21. These events, which took place on or "shortly after" September 12, 2019, occurred more than two months ago. But nothing in the Motion suggests Art Headquarters took any action to protect its interests at that time.

Art Headquarters also fails to meet two procedural requirements necessary to obtain the extraordinary remedy of a temporary restraining order. First, Local Rule 4.05(b)(3), Middle District of Florida, requires that a motion for a temporary restraining order, among other things, "be accompanied by a proposed form of temporary restraining order prepared in strict accordance with the several requirements contained in Rule 65(b) and (d)." And Rule 65(d) requires a temporary restraining order to, among other things, "describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1)(C). The proposed temporary restraining order attached to Art Headquarters' Motion,

which attempts to incorporate the Agreement by reference, does not meet the requirements of Rule 65. *See* doc. 5-1 at pp. 1-2.

Second, Rule 65(b)(1)(B) requires the movant's attorney to certify "in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1)(B). Here, although Art Headquarters' attorney certifies that a copy of the Motion was delivered to Lemak via her Artline e-mail, Art Headquarters does not discuss why notice in the form of proper service should not be required before a court order enjoining the relevant conduct is imposed.

A temporary restraining order "is an extraordinary remedy to be granted only under exceptional circumstances." *Cheng Ke Chen*, 783 F. Supp. 2d at 1186. After careful consideration, the Court finds this case does not present exceptional circumstances sufficient to warrant such extraordinary remedy.

Accordingly, it is **ORDERED:**

1. Plaintiff's Motion for a Temporary Restraining Order (Doc. 5) is **DENIED**, without prejudice to Plaintiff filing a motion for preliminary injunction and serving Defendant with the motion and the complaint, pursuant to Rule 4, Fed. R. Civ. P.

2. Plaintiff's Motion for Hearing (Doc. 7) is **DENIED** as moot.

**DONE and ORDERED** in Tampa, Florida, this 27th day of November 2019.

Charlene Edwards Honeywell
United States District Judge

Copies to: All Counsel of Record
All *Pro Se* Parties